AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. 19-sc-672 |
| ELECTRONICALLY STORED COMMUNICATIONS ASSOCIATED WITH TEXTNOW TELEPHONE NUMBERS (805) 457-5253, (323) 813-7182 AND E-MAIL ADDRESS ERIKAFONSECA80@ATT.NET CURRENTLY STORED WITH TEXTNOW | ) ) ) ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A incorporated herein.

located in the _____ District of _____ Columbia _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | PWID Controlled Substance |
| 21 U.S.C. § 846 | Conspiracy to commit such offenses |

The application is based on these facts:

- ☑ Continued on the attached sheet.
- ☑ Delayed notice of __90__ days *(give exact ending date if more than 30 days:* __06/24/2019__ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Derek L. Starliper, Inspector, USPIS
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means)*.

Date: ___03/26/2019___

_____
*Judge's signature*

City and state:  Washington, D.C.

Magistrate Judge Robin M. Meriweather
*Printed name and title*

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means     ☑ Original     ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>ELECTRONICALLY STORED COMMUNICATIONS<br>ASSOCIATED WITH TEXTNOW TELEPHONE NUMBERS<br>(805) 457-5253, (323) 813-7182 AND E-MAIL ADDRESS<br>ERIKAFONSECA80@ATT.NET CURRENTLY STORED WITH<br>TEXTNOW | )<br>)<br>)<br>)    Case No.  19-sc-672<br>)<br>)<br>) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____Columbia_____
*(identify the person or describe the property to be searched and give its location)*:

    See Attachment A incorporated herein.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

    See Attachment B incorporated herein.

**YOU ARE COMMANDED** to execute this warrant on or before _____ *(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10:00 p.m.     ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Magistrate Judge Robin M. Meriweather_____.

*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for _____ days *(not to exceed 30)*     ☑ until, the facts justifying, the later specific date of _____06/24/2019_____.

Date and time issued: _____3/26/2019_____     _____

*Judge's signature*

City and state:   _____Washington, D.C._____     _____Magistrate Judge Robin M. Meriweather_____

*Printed name and title*

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br>  19-sc-672 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

| **Certification** |
|---|

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**ATTACHMENT A**
**Property to Be Searched**

This warrant applies to information associated with the TextNow TARGET ACCOUNT registered with E-Mail Address erikafonseca80@att.net. This includes TextNow Telephone Number (805) 457-5253 (TARGET NUMBER-1) and (323) 813-7182 (TARGET NUMBER-2), and, that is stored at a premises controlled by TextNow Inc., a Voice over Internet Protocol service provider located at 420 Wes Graham Way, 2nd Floor, Waterloo, Ontario, Canada.

## ATTACHMENT B

### Particular Things to be Seized and Procedures
### to Facilitate Execution of the Warrant

**I.     Information to be disclosed by TextNow (the "Provider") to facilitate execution of the warrant**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including subscriber information, payment information, contact lists, call records, location records, the content of sms or text messages, including the date, time, recipient and sender information, the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.     The content of all incoming and outgoing text messages sent from, or received by, the above referenced account, from **December 23, 2018** through **the present.**

The Provider shall deliver the information set forth above via United States mail, courier, or e-mail to:  Kevin.Rosenberg@usdoj.gov or Kevin Rosenberg, Rm. 4124, 555 4th Street, Washington, D.C. 20005

**Information to be seized by the government**

All information described above in Section I that constitutes **evidence** of violations of 21 U.S.C. § § 841 and 846, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a) The possession and possession with intent to distribute controlled substances.

(b) The acquisition, preparation, packaging, pricing, and sale of controlled substances.

(c) The laundering of proceeds from the sale of controlled substances.

(d) The use of code words representing controlled substances.

(e) The identity of individuals purchasing or supplying controlled substances to the user of the target phone number.

(f) Information relating to the state of mind of the user of the target telephone in connection with the plan to distribute controlled substances.

(g) Information relating to the possession of drug processing paraphernalia such as scales, grinders, or Pyrex containers.

(h) Identification of coconspirators, accomplices, and aiders and abettors in the commission of the above offenses;

(i) The location of drug storage and processing sites;

(j) The identity of the persons who communicated with the account holder about matters relating to purchasing and distribution of controlled substances, including records that help reveal their whereabouts.

## II.    Government procedures for warrant execution

The United States government will conduct a search of the information produced by the Provider and determine which information is within the scope of the information to be seized specified in Section II.  That information that is within the scope of Section II may be copied and retained by the United States.

Law enforcement personnel will then seal any information from the Provider that does not fall within the scope of Section II and will not further review the information absent an order of the Court.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _____, attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct. I am employed by TextNow Inc., and my official title is _____. I am a custodian of records for TextNow Inc. I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of TextNow Inc., and that I am the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I further state that:

a.  all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

b.  such records were kept in the ordinary course of a regularly conducted business activity of TextNow Inc.; and

c.  such records were made by TextNow Inc. as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

_____    _____

Date                                               Signature

3

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

IN THE MATTER OF THE SEARCH OF:

ELECTRONICALLY STORED
COMMUNICATIONS ASSOCIATED WITH
TEXTNOW TELEPHONE NUMBERS (805)
457-5253, (323) 813-7182 AND E-MAIL
ADDRESS ERIKAFONSECA@ATT.NET
CURRENTLY STORED WITH TEXTNOW

**Magistrate Case No.** 19-sc-672

**Under Seal**

**AFFIDAVIT IN SUPPORT OF AN APPLICATION**
**UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE**

I, Derek Starliper, Inspector with the United States Postal Inspection Service ("USPIS"),
Washington Division Office ("WDO"), Washington, D.C., (hereinafter the "affiant") being duly
sworn, depose and state as follows:

**INTRODUCTION**

1.      I make this affidavit in support of an application for a search warrant under Federal
Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) for electronically stored
communications associated with Text Now telephone number (805) 457-5253, hereinafter referred
to as TARGET NUMBER-1, (323) 813-7182, hereinafter referred to as TARGET NUMBER-2.
TARGET NUMBER-1 and TARGET NUMBER-2 are both controlled and associated with the
TARGET ACCOUNT, registered under e-mail address erikafonseca80@att.net.   The service
provider is Text Now Inc., a Voice over Internet Protocol service provider located at 420 Wes
Graham Way, 2nd Floor, Waterloo, Ontario, Canada.  TextNow is a Voice over Internet Protocol
service that allows users to text and call any number in Canada and the United States. TextNow
provides the user with a real telephone number which can be used on any smartphone, tablet, or

desktop computer with an internet connection. The application can be used on multiple devices under the same log in at the same time. The TextNow app can be downloaded for most IOS devices, and Android devices. The TARGET ACCOUNT is being used by Erica Fonseca ("FONSECA"). The TARGET NUMBERS are both subscribed to the same username "Fonseer," with the same name "M," and the same e-mail address <u>erikafonseca80@att.net</u>. The telephone number, (805) 457-5253, assigned to TARGET NUMBER-1 was subscribed to, and used by FONSECA from December 23, 2018, until January 18, 2019. The telephone number, (323) 813-7182, assigned to TARGET NUMBER-2 was subscribed to, and used by FONSECA from January 18, 2019, until March 20, 2019. Both numbers are registered to the same TARGET ACCOUNT connected to e-mail address erikafonseca80@att.net.

2.      I am "an investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code. I have been an Inspector with USPIS since October 2018, and I am currently assigned to the Maryland Narcotics Team at WDO. Prior to my employment with USPIS, I was a Special Agent with United States Attorney's Office, and a Police Officer with the Metropolitan Police Department, Washington, D.C. Since approximately 2008, I have been working on federal narcotics investigations and have participated in several investigations which led to the arrest and conviction of narcotics distributors. I have received training and experience in interviewing and interrogation techniques, arrest procedures, search and seizure, narcotics, white collar crimes, search warrant applications, and various other crimes. In the course of my training and experience, I have become familiar with the methods and techniques associated with the distribution of narcotics, the laundering of drug proceeds, and the organization

of drug conspiracies. In the course of conducting these investigations, your affiant has been involved in the use of the following investigative techniques: interviewing informants and cooperating witnesses; conducting physical surveillance; supporting undercover operations; consensual monitoring and recording of both telephonic and non-telephonic communications; analyzing telephone pen register and caller identification system data; conducting court-authorized electronic surveillance; and preparing and executing search warrants that have led to substantial seizures of narcotics, firearms, and other contraband.

3.      This affidavit is based, in part, upon information provided to me by other agents of the Federal Bureau of Investigation ("FBI"), members of the Torrance, CA, Police Department ("TPD"), information provided by confidential sources, controlled purchases of illegal drugs, physical surveillance, and other information gathered during the course of this investigation. Because this affidavit is being submitted for the limited purpose of securing an order to search electronically stored communications on the target telephone, I have not included every fact known to me concerning this investigation. I have set forth only the facts, which I believe are necessary to establish probable cause to search information associated with the TARGET ACCOUNT currently stored with TextNow.

4.      I am currently participating in a long-term narcotics investigation being conducted by the FBI and USPIS. This investigation targets narcotics traffickers in the District of Columbia, California, and neighboring jurisdictions. As a result of my personal participation in this investigation, as well as through interviews with and analysis of reports submitted by other agents of the FBI and officers and detectives from TPD, who are involved in this investigation, I am familiar with all aspects of this investigation. On the basis of this familiarity, and on the basis of other information which I have reviewed and determined to be reliable, I allege the facts to show

that there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a)(1) and 846 have been committed, are being committed, and will be committed by FONSECA, Jaime Vargas ("VARGAS"), and others, including others yet unknown or not fully identified.

5.    As demonstrated below, the investigation to date has shown that FONSECA is a narcotics trafficker. Your affiant believes that FONSECA distributes methamphetamine and cocaine. Your affiant believes FONSECA supplies wholesale level narcotics traffickers who then supply other distributors. The investigation has led your affiant to believe that FONSECA is being supplied with wholesale redistribution amounts of controlled substances by VARGAS and others in the greater Los Angeles region.

6.    The investigation to date has shown that FONSECA uses her TextNow account to further her drug trafficking activities by arranging narcotics sales through both text messages and voice calls on TextNow. The information sought through this warrant includes subscriber information, payment information, contact lists, saved and shared photographs and images, the content of sent and received SMS and text messages, along with the information identifying the sender and recipient of these messages. In your affiant's experience, drug dealers commonly save the names and numbers of their drug trafficking associates in their contact lists. In my experience, drug dealers commonly communicate over text message to arrange narcotics sales. In my experience, drug dealers such as FONSECA may send photographs of drugs for sale in order to give the buyer confidence that the drugs are available. Earlier in this investigation, it was shown that CW-1 and CW-2 negotiated their drug sales through text message and often sent photographs of shipping labels (parcels containing money and methamphetamine) to each other to further their business.

7.    The sought after information stored with TextNow is believed to contact valuable evidence of FONSECA's involvement in violating Title 21, United States Code, Section 846 and 841. The information may also help identify FONSECA's drug supplier and others involved in her drug trafficking network.

## COOPERATING WITNESSES

8.    This investigation has made use of a cooperating witness ("CW-1") who has made several controlled purchases of methamphetamine from FONSECA. CW-1 has been shown to be reliable to law enforcement. In February 2019, CW-1 pled guilty to a violation of Title 21, United States Code, Sections 846 and 841 (b)(1)(A), and entered into a cooperation agreement with the United States. CW-1 has prior convictions for felony drug offenses. CW-1 is awaiting sentencing and is providing information to law enforcement with the hope of receiving a sentence reduction for providing substantial assistance to the government in ongoing investigations. CW-1 has provided information regarding various drug traffickers in Los Angeles, CA, and the surrounding area. Most of the information CW-1 has provided has been corroborated through subsequent controlled purchases and investigation. CW-1 has never made any statements known to be untruthful to your affiant.

9.    CW-2 began cooperating with the FBI on or about November 27, 2017. CW-2 is considered reliable and credible, and to date, all attempts at verifying information given by CW-2 have been successful. CW-2 pleaded guilty to violating Title 21, United States Code, Sections 846 and 841(b)(1)(A). As part of CW-2's plea agreement, CW-2 agreed to cooperate with law enforcement. CW-2 cooperates in hopes of receiving a sentencing reduction for providing substantial assistance to the government in ongoing investigations.

**PROBABLE CAUSE**

**CONTROLLED PURCHASE JULY 24, 2018**

10.     On July 24, 2018, members of the FBI and DEA conducted an undercover operation in Los Angeles that resulted in CW-2 buying a large quantity of methamphetamine from CW-1, using law enforcement funds.  During the operation, which was recorded, CW-1 transported CW-2 to a home located on Holmes Avenue, in Los Angeles, to wait for CW-1's narcotics supplier to deliver the methamphetamine.[1]  During the operation, CW-1's father acted as a look-out and alerted CW-1 to the presence of suspected law enforcement vehicles in the area.  This alert prevented the supplier from delivering the methamphetamine to Holmes Avenue, and resulted in CW-1 making arrangements with CW-2 to mail the methamphetamine to Washington, D.C.

11.     On August 9, 2018, CW-2 received an incoming telephone call from CW-1.  During the telephone call, CW-1 provided CW-2 with a tracking number for the UPS parcel which contained the methamphetamine.

12.     On August 15, 2018, members of law enforcement in Washington, D.C. seized the UPS parcel with that tracking number, which had been mailed from CW-1 in Los Angeles to CW-2 in D.C.  Law enforcement searched the parcel and learned that it contained a "Mickey Mouse" diaper bag with approximately 2.5 pounds of a crystalline substance, which field-tested positive for methamphetamine.

13.     In December 2018, members of law enforcement approached CW-1 regarding the above-mentioned methamphetamine sale, as well as several other undercover operations conducted by law enforcement, in which CW-1 supplied CW-2 with narcotics.  CW-1 agreed to cooperate with law enforcement, and identified several Los Angeles-based narcotics suppliers who were shipping, or using CW-1 to ship narcotics throughout the United States.  CW-1 identified one of those narcotics suppliers as FONSECA.   CW-1 explained that FONSECA provided the methamphetamine CW-1 shipped to CW-2 in August 2018, which law enforcement seized.

---

[1] CW-1 was not cooperating with law enforcement at the time and was unaware that CW-2 was acting as a cooperator.

14.    CW-1 informed law enforcement that as a result of the August 15, 2018 seizure, CW-1 still owed FONSECA $6,800 for the three pounds of methamphetamine.  CW-1 initially received five pounds of methamphetamine from FONSECA in late July 2018 or early August 2018. CW-1 informed law enforcement that CW-1 sold CW-2 three of the five pounds of methamphetamine in the August 15, 2018 transaction.  CW-1 informed law enforcement that one pound of methamphetamine was sold separately and CW-1 returned the last pound of methamphetamine to FONSECA.  CW-1 explained that CW-1 had not yet paid FONSECA for any of the methamphetamine that she "fronted" him.  CW-1 therefore owed FONSECA $6,800.

15.    On December 28, 2018 FONSECA sent a text message to CW-1 from the TARGET ACCOUNT using TARGET NUMBER-1 that read, "Hello."  CW-1 replied, "Who is this?" FONSECA answered, "Your neighbor I change the number," to which CW-1 replied, "Ok." FONSECA then asked, "Any news?"  CW-1 replied, "Looks like it's going to be after new years but it's for sure."  Based on my training and experience, I believe that FONSECA was asking CW-1 about the status of the outstanding debt owed from the methamphetamine supplied to him by FONSECA in August 2018 .[2]

16.    On January 9, 2019, CW-1 received two text messages from FONSECA and TARGET ACCOUNT using TARGET NUMBER-1.  The messages sent to CW-1 from FONSECA read, "Good morning" and "How you been i need to hear from you and the tittles."  I believe that FONSECA was again asking CW-1 about the outstanding debt, and CW-1 has since confirmed FONSECA was asking him about his outstanding debt.  Based on my training and experience, narcotics traffickers often use code words in an attempt to conceal their nefarious dealings from law enforcement.  FONSECA's reference to "tittles" misspelled, but meant as "titles," is in reference to the $6,800 debt CW-1 owed to FONSECA.  On January 10, 2019 FONSECA again sent a text message to CW-1 using the TARGET ACCOUNT and TARGET NUMBER-1 stating, "The auction wants to talk to you about the papers from the cars."  Based on my training and

---

[2] All actions taken by CW-1 after December 10, 2018 were done at the direction and under the supervision of law enforcement.

experience, I believe that FONSECA was informing CW-1 that her supplier wished to speak to CW-1 about the $6,800 debt. CW-1 has confirmed that this belief is accurate.

17.     On January 23, 2019 CW-1 sent FONSECA a text message to    TARGET NUMBER-1 that read, "He's going to send some of the money down and them he's going to come down with the rest. It should be Monday. I told him everything ur telling me." CW-1 did not receive a response from FONSECA.  On January 25, 2019 CW-1 again sent an outgoing text message to TARGET NUMBER-1 that read, "How much was each one of them cars." CW-1 did not receive a response. In this instance CW-1 is using the code word "cars" in reference to the debt.

18.     On January 30, 2019 CW-1 informed law enforcement that FONSECA had started using a new application based telephone number generated by the TARGET ACCOUNT, this being TARGET NUMBER-2.[3]  On January 30, 2019, CW-1 sent a text message to FONSECA on TARGET NUMBER-2 that read, "Good morning . . . This is ur neighbor. I been texting the number u gave with no response . . .I need to know the total cost on the cars." FONSECA replied, "17," to which CW-1 answered, "Ok." I believe 17 is a reference to $1700, which is the cost for each pound of methamphetamine FONSECA provided to CW-1. CW-1 has since confirmed that this is a correct interpretation.

19.     On February 4, 2019 law enforcement conducted an operation with CW-1 to pay FONSECA the $6,800 debt.  At approximately 2:45 p.m. (PST) surveillance was initiated at "A & F Registration" located at 8420 Compton Avenue, Los Angeles, CA 90001, a car titling business associated with FONSECA.[4]  FBI Special Agents Matt Zito and Carolina Nolte met with CW-1 and provided CW-1 with $6,800 in Official Government Funds (OGF). CW-1 was searched and found to be free of money and contraband.  CW-1 was given audio/video recording equipment and was

---

[3] Utilizing application based phone numbers allows narcotics traffickers to easily change their telephone numbers. In my training and experience narcotics traffickers often switch phone numbers on a regular basis in an attempt to avoid detection by law enforcement.  Law enforcement data base checks indicate that from December 23 to present, FONSECA utilized a subsidiary service provider of Bandwidth.com called "TextNow" which is a cellular telephone application that allows users to easily change phone numbers.  After January 30, 2019, CW-1 only spoke with FONSECA on TARGET NUMBER-2.

[4] In addition to law enforcement data base check associating A & F Registration to FONSECA, a Google Map search of 8420 Compton Avenue, Los Angeles, CA 90001 shows that on the side of the building is an advertisement for the business with the email address "erikafonseca80@att.net.

instructed to deliver the funds to FONSECA. CW-1 was also provided a transmitter to allow law enforcement to monitor the interaction. At approximately 3:11 p.m. (PST), CW-1 was observed by law enforcement arriving at A & F Registration. CW-1 parked and entered the front door (main entrance) of the business. At approximately 3:15 p.m. (PST), CW-1 was observed by law enforcement exiting A & F Registration. CW-1 returned to her/his vehicle, accessed the vehicle and then re-entered A & F Registration. At approximately 3:21 p.m. (PST) FONSECA's known vehicle, a black Mercedes Benz bearing California license plate number 7LON887 was observed arriving at A & F Registration. A Hispanic female matching FONSECA's description exited the vehicle and entered the business through the main entrance. At approximately 3:23 p.m. (PST) CW-1 exited the business, entered his/her vehicle and departed the area. CW-1 was surveilled back to the staging location where Special Agents Zito and Nolte retrieved the recording equipment and the transmitter. CW-1 was de-briefed and noted that the debt owed to FONSECA was settled and FONSECA was open to continuing to traffic narcotics with CW-1. During the meeting, FONSECA offered to provide CW-1 with two pounds of methamphetamine on consignment and intimated that she had the methamphetamine close at hand. During the de-brief, CW-1 verbally confirmed to agents that FONSECA was paid the $6800 thus settling the debt. Additionally, the recording equipment worn by CW-1 during the operation confirms that CW-1 paid FONSECA the $6,800.

## CONTROLLED PURCHASE MARCH 13, 2019

20.    In February of 2019, pursuant to 18 U.S.C. § 2511(2)(c), members of the FBI initiated consensual monitoring of a cellular telephone provided to CW-1 by law enforcement. On March 7, 2019, at approximately 2:12 p.m. (PST) (activation 24), CW-1 sent an outgoing text message to FONSECA that read, "Let me know if it going to be ready." FONSECA replied from the TARGET ACCOUNT, using TARGET NUMBER-2, "U need for next week right." The following day at approximately 12:35 p.m. (PST) (activation 80) CW-1 sent an outgoing message to FONSECA that read, "Wednesday." FONSECA responded from TARGET NUMBER-2,

"Ok."[5]  Based upon your affiant's training and experience, FONSECA was confirming she would be able to supply CW-1 with narcotics the following Wednesday.

21.     On March 12, 2019, at approximately 11:02 a.m. (PST) (activation 421), CW-1 sent an outgoing text message to FONSECA that read, "I'll be ready around 12 tomorrow and I'll come by and pick those up."  In response CW-1 received three incoming text messages from FONSECA using the TARGET ACCOUNT/ TARGET NUMBER-2 that read, "Ok," "I'm waiting for the girls to get here," and "Do you have the invoices or invoices later."  CW-1 responded via text to the FONSECA, "Invoices now.  Well tomorrow I'll have all of it."  Based upon your affiant's training and experience, your affiant believes that when FONSECA informed CW-1 she was "waiting for the girls to get here," she was using coded language to alert CW-1 she was waiting to receive narcotics from her supplier.  Additionally, when FONSECA asked CW-1 if would have the "invoices now or later," FONSECA was checking if CW-1 had the currency to pay for the narcotics upfront, or needed to take the narcotics on consignment.

22.     On March 12, 2019, at approximately 4:56 p.m. (PST), CW-1 met FONSECA at her business, located at 8420 Compton Avenue, Los Angeles, CA, 90001.  During the meeting, CW-1 advised FONSECA he would be ready to conduct the narcotics transaction with her on the following date.  FONSECA confirmed that she was ready to conduct the transaction.  CW-1 stated he wanted to purchase "just 3," referring to three pounds of methamphetamine.  FONSECA also advised CW-1 that her narcotics supplier had pills for sale, and would get additional information before they met the following day.  CW-1 met members of law enforcement at a secure location

---

[5] The FBI's consensual monitoring system is currently capturing the content of outgoing text messages to TARGET NUMBER-2 but is not capturing the phone number associated TARGET NUMBER-2. CW-1 has confirmed that he/she was and is sending these outgoing text messages to TARGET NNUMBER-2. The FBI consensual monitoring system is capturing the phone number associated with TARGET NUMBER-2 for text messages sent by FONSECA and received by CW-1.

before and after the meeting, was searched for contraband, and equipped with an audio recording device.

23.     On March 13, 2019, at approximately 10:21 a.m. (PST) (activation 516), CW-1 sent an outgoing text message to FONSECA that read, "What time will you be ready," to which FONSECA replied using TARGET NUMBER-2, "30 minutes."  At approximately 10:28 a.m. (PST), surveillance agents observed a BMW, white in color, bearing California license plate no. 6VVU704, park in the north alley next to FONSECA's business located at 8420 Compton Avenue, Los Angeles, CA.  A Hispanic male, later identified as VARGAS, exited the front passenger door of the vehicle and entered FONSECA's business.  VARGAS was observed carrying a laptop style bag, black in color.  At approximately 10:30 a.m. (PST), VARGAS exited FONSECA's business, entered the listed BMW, and drove away from the area (VARGAS was empty handed).  At approximately 10:30 a.m. (PST) CW-1 received an incoming text message from FONSECA that read, "Ready."  Approximately twenty minutes later, FONSECA arrived at 8420 Compton Avenue, Los Angeles, CA.  Based upon your affiant's training and experience, your affiant believes that VARGAS delivered the methamphetamine to the listed location and was in communication with FONSECA, via telephone, to alert her that he left the narcotics at 8420 Compton Avenue Los Angeles, CA.

24.     At approximately 11:07 a.m. (PST), CW-1 entered FONSECA's business, 8420 Compton Avenue, Los Angeles, CA.  During the meeting, FONSECA gave CW-1 a brown box that contained three plastic ziplocs (each wrapped in saran wrap) that contained a white crystalline substance, in exchange for $5,100.00 in law enforcement funds.  CW-1 advised FONSECA, "If they send the money down from D.C…If they send it, I'll come get it.  If not, I'm not going to play that game no more."  Based on your affiant's training and experience, CW-1 was alerting

FONSECA that if his alleged customer in D.C. sent currency he would purchase an additional quantity of methamphetamine for his D.C. customer. CW-1 confirmed the price per pound of methamphetamine was $1,700.00.

25.     CW-1 left the listed location and met members of law enforcement at a prearranged location. CW-1 was searched, both before and after the transaction, and found to be free of contraband. The transaction between CW-1 and FONSECA was recorded with an audio recording device given to CW-1 by law enforcement. Custody of the three plastic ziplocs that each contained a white crystalline substance was transferred from CW-1 to law enforcement. The combined weight of the white crystalline substance (with packaging) was 1,398.4 grams. A portion of the white crystalline substance was subjected to a preliminary field test and did show a positive color reaction for methamphetamine.

26.     At approximately 11:28 a.m. (PST), surveillance agents observed FONSECA exit 8420 Compton Avenue, Los Angeles, CA, carrying her purse, and a black laptop bag that appeared to be the same laptop bag left inside of the location by VARGAS. Surveillance agents followed FONSECA, who was operating her known Mercedes, to a McDonald's located at 8681 S. Alameda Street, Los Angeles, CA. VARGAS's BMW, described in paragraph 16 *supra*, was also observed parked in the McDonald's parking lot. Surveillance agents observed VARGAS walk from his BMW to the driver's side door/window of FONSECA's Mercedes. VARGAS reached into the driver's side window of the Mercedes, and took custody of the black laptop bag from FONSECA. VARGAS walked back to his BMW, entered the front passenger seat, and left the area. Based on your affiant's training and experience, I believe FONSECA was either returning an unsold amount of methamphetamine, handing VARGAS his share of the profits from this drug sale, or possibly both.

## CONTROLLED PURCHASE MARCH 14, 2019

27.     On March 13, 2019, at approximately 7:07 p.m. (PST), CW-1 sent an outgoing text message to FONSECA that read, "The other invoices will be here at 9 in the morning from DC and I'll be there at 10." Approximately four minutes later, CW-1 sent another outgoing text message to FONSECA that read, "3." Based upon your affiant's training experience, CW-1 was using coded language to advise FONSECA he was in possession of money to purchase narcotics, and the number "3" identified the amount of methamphetamine CW-1 wanted to purchase.

28.     On March 14, 2019, at approximately 9:10 a.m. (PST) (activation 607), CW-1 made an outgoing telephone call to FONSECA on TARGET NUMBER-2. During the telephone call, CW-1 advised FONSECA, "I was calling to pick up those other three," referring to three pounds of methamphetamine. FONSECA replied, "You want to pick up other three." CW-1 confirmed he could meet with FONSECA right away if she was available. FONSECA stated, "Ok let, let me call him and I'll let you know right now." Based upon your affiant's training and experience, I believe that when FONSECA referenced calling "him" she was referring to her narcotics supplier. Less than an hour later (activation 616), CW-1 made another outgoing telephone call to FONSECA on TARGET NUMBER-2. During the telephone call, CW-1 asked FONSECA if she was ready to meet. FONSECA replied, "Not yet give me like twenty minutes."

29.     On March 14, 2019, at approximately 10:45 a.m. (PST) (activation 633) CW-1 received an incoming text message from FONSECA using TARGET NUMBER-1 that read, "Mcdonals Alameda firestone." Based upon your affiant's training and experience, I believe FONSECA was providing CW-1 with a location to conduct the methamphetamine transaction. At approximately 10:53 a.m. (PST), surveillance agents observed FONSECA's Mercedes in the McDonald's parking lot located at 8681 S. Alameda Street, Los Angeles, CA. Approximately ten

minutes later, CW-1 entered the parking lot and parked behind FONSECA's Mercedes. FONSECA exited her Mercedes, carrying a pink box, and leaned into the front passenger area of CW-1's vehicle. During the transaction, CW-1 provided FONSECA with $5,100.00 in law enforcement funds in exchange for three clear plastic ziploc bags that each contained a crystalline substance (concealed inside of pink box).

30.     CW-1 left the listed location and met members of law enforcement at a prearranged location. CW-1 was searched, both before and after the transaction, and found to be free of contraband. The transaction between CW-1 and FONSECA was recorded with an audio recording device given to CW-1 by law enforcement. Custody of the three plastic ziplocs that each contained a white crystalline substance was transferred from CW-1 to law enforcement. The combined weight of the white crystalline substance (with packaging) was 1,371.3 grams. A portion of the white crystalline substance was subjected to a preliminary field test and did show a positive color reaction for methamphetamine.

31.     Based on the above series of conversations and text messages, your affiant believes that FONSECA is using the TARGET ACCOUNT to facilitate her drug trafficking activities. Your affiant believes that FONSECA is creating telephone numbers through the TARGET ACCOUNT, and communicating with her drug supplier and customers through these numbers, such as TARGET NUMBER-1 and TARGET NUMBER-2. Your affiant further believes that evidence of drug trafficking, and evidence of the identity of FONSECA's co-conspirators and suppliers will be found in the information stored with TextNow in the TARGET ACCOUNT.

## AUTHORIZATION REQUEST

32.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

33.     The proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

34.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

DEREK L. STARLIPER, Inspector
United States Postal Inspection Service

Subscribed and sworn pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on March 26, 2019.

United States Magistrate Judge